# UNITED STATES COURTS FOR THE FIRST CIRCUIT

## Appeal No. 13-1817
_____

UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

### PRISCILLA BATISTA

PLAINTIFF-APPELLANT

v.

### COOPERATIVA DE VIVIENDA JARDINES DE SAN IGNACIO; et al

DEFENDANTS-APPELLEES
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO
_____

## BRIEF FOR APPELLANT PRISCILLA BATISTA
_____

**DEGUZMÁN LAW OFFICES**
ATTORNEYS FOR APPELLANT
PO BOX 362738
San Juan, Puerto Rico 00936-2738
Tel.: (787) 756-2765
Fax: (787) 756-4024

**GUILLERMO F. DE GUZMAN**
**gdeguzman@dgglawpr.com**
Court of Appeals No. 42943

## TABLE OF CONTENTS

**Pages**

| | | |
|---|---|---|
| 1. | Statement of Jurisdiction………………………………… | 7-10 |
| 2. | Statement of the Issues Presented for Review……….…… | 10-11 |
| 3. | Statement of the Case……………....…………………… | 11-12 |
| 4. | Statement of the Facts…………………......………….. | 12-20 |
| 5. | Summary of Argument…………..………………..…….. | 20-21 |
| 6. | Argument…………………………..………………….. | 21-42 |
| 7. | Conclusion……………………………..………………. | 42 |

# TABLE OF AUTHORITIES

|  | **CASES** | **PAGES** |
|---|---|---|
| 1. | Astralis Condo. Assoc. v. Vélez-Avilés, 620 F.3d 62, 66 (1st Cir. 2010) | 9,23,25 |
| 2. | Santoni v. Potter, 369 F.3d 594, 598 (1st. Cir., 2004) | 21 |
| 3. | Wojcik v. Mass, State Lottery Comm'n, 300 F.3d 92, 98 (1st Cir. 2002) | 21 |
| 4. | Gonzalez v. Banco Central Corp., 27 F.3d 751, 755 (1st Cir. 1994) | 21 |
| 5. | Wolf v. Gruntal & Co., 45 F.3d 524, 527 (1st Cir. 1995) | 21 |
| 6. | Porn v. National Grange Mut. Ins. Co., 93 F.3d 31, 33 (1st Cir. 1996) | 21 |
| 7. | Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986) | 21 |
| 8. | Basic Controlex Corp. Inc. v. Klockner Moeller Corp., 202 F.3d 450, 453 (1st Cir. 2000) | 22 |
| 9. | Flowers v. Fiore, 359 F.3d 24, 29 (1st Cir. 2004) | 22 |
| 10. | Jaroma v. Massey, 873 F.2d 17, 20 (1st Cir. 1989) | 22 |
| 11. | De la Vega v. San Juan Star, Inc., 377 F.3d 111, 117-116 (1st Cir. 2004) | 22 |
| 12. | Taylor v. Harbour Pointe Homeowners Assoc., 690 F.3d 44, 49 (2nd Cir. 2012) | 23,33 |
| 13. | Tsombanidis v. W. Haven Fire Dep't, 352 F.3d 565, 573 n. 4 (2nd Cir. 2003) | 23,33 |
| 14. | Sch. Bd. Of Nassau Cty. v. Arline, 480 U.S. 273, 288 n.17 (1987) | 23 |
| 15. | City of Edmonds v. Oxford House, Inc., 514 U.S. 725, 729, 115 S. Ct. 1776, 131 L.Ed.2d 801 (1995) | 23,38 |
| 16. | Monette v. Electronic Data Sys. Corp., 90 F.3d 1173, 1184 n.10, 5 AD Cas. (BNA) 1326, 1335 n.10 (6th Cir. 1996) | 24 |
| 17. | Vande Zande v. Wisconsin Dept. of Admin., 44 F.3d 538, 543, 3 AD Cas. (BNA) 1636, 1638-39 (7th Cir. 1995) | 24 |

18.    US Airways, Inc. v. Barnett, 535 U.S., 122 S. Ct. 1516, 1522 (2002)        24

19.    Schwarz v. City of Treasure Island, 544 F.3d 1201, 1222, 1224 (11th Cir.        26,27
       2008)

20.    Giebeler v. M & B Assoc., 343 F.3d 1143 (9th Cir. 2003)        26,27

21.    Lapid-Laurel, L.L.C. v. Zoning Bd. Of Adjustment of Twp. Of Scotch        26,27
       Plains, 284 F.3d 442, 446 (3rd Cir. 2002)

22.    U.S. Airways v. Barnett, 535 U.S. 391, 405 (2002)        28

23.    City of Arlington, Texas v. FCC, 133 S. Ct. 1863, ____, 185 L. Ed. 2d        31
       941, ____ (2013)

24.    Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467        31
       U.S. 837 842 (1984)

25.    Bryant Woods Inn v. Howard Cty., 124 F.3d 597,605 (4th Cir. 1997)        34

26.    Salute v. Statford Green Garden Apts., 136 F.3d 293, 302 (2d Cir. 1998)        34,35

27.    Comm. Servs., Inc. v. Wind Gap Mun. Auth., 421 F.3d 170, 177 (3d Cir.        37
       2005)

28.    National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S. Ct. 2061        41
       (2002)

29.    National R.R. Passenger Corp. v. Morgan 536 U.S. 114, 122 S. Ct. 2061        41

30.    Martinez v. Potter, 347 F.3d 1208, 1210-11 (10th Cir. 2003)        41

31.    McKenzie v. St. Tammany Parish School Bd., 2006 WL 2054391 at *2,        41
       *3 (E.D. La. July 19, 2006

32.    Prince v. Rice, 453 F. Supp. 2d 14, 23-24 )D.D.C. 2006)        41

33.    Romero-Ostolaza v. Ridge, 370 F. Supp. 2d 139, 148-50 (D.D.C. 2005)        42

## FEDERAL STATUTES

1.    28 U.S.C. §1338(a)        7

2.    42 U.S.C. §§3601 et seq.        8

3.    28 U.S.C. §§119, 451, 1291        8

4.    42 U.S.C. §3604 (f)(3)                                            10

5.    29 U.S.C. §794                                                      10

6.    42 U.S.C. §1437f (2012)                                        13

7.    42 U.S.C. §3604 (f)                                               22

8.    42 U.S.C. §3604 (f)(2)                                          22

9.    42 U.S.C. §3604 (f)(3)(B)                                     23,24,25,
                                                                                  26, 31,35,
                                                                                       38

10.   42 U.S.C. §§12101-12213                                     23

11.   42 U.S.C. §1437f(t)(1)(A)                                    35

12.   42 U.S.C. §3612(m)                                            39

13.   42 U.S.C. §3617                                                 39

14.   42 U.S.C. §3606(f)(2)                                         39

15.   42 U.S.C. §3606(f)(3)(B)                                      40

**FEDERAL RULES AND REGULATIONS**

1.    Rule 4 (a)(1)(A)                                                   8

2.    Local Rule of Appellate Procedure 34(a)                   9

3.    Federal Rule of Appellate Procedure 4(a)(1)(A)          9

4.    Federal Rule Civ. P. 56(e)                                     22

5.    HUD Handbook 4350.3, Occupancy Requirements of      29,32
      Subsidized Multifamily Housing Programs, REV-1, CHG-3,
      2-39 (June 2009) § 3-23E.4.c., available at
      http://portal.hud.gov/hudportal/documents/huddoc?id=43503c
      3HSGH.pdf

6.    Public Housing Occupancy Guidebook, at p. 64, June 2003, available at    30,32
      http://portal.hud.gov/hudportal/documents/huddoc?id=DOC_10760.pdf

## TREATISES

1.  Susan B. Eisner, <u>There's No Place Like Home:</u>                                  25
    <u>housing Discrimination Against Disabled Persons</u>
    <u>and the Concept of Reasonable Accommodation</u>
    <u>Under the Fair Housing Amendments Act of 1998</u>,
    14 N.Y.L. SCH . J. HUM . RTS . 435, 447 (1998).

## UNITED STATES COURTS FOR THE FIRST CIRCUIT

## Appeal No. 13-1817

_____

UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

### PRISCILLA BATISTA

PLAINTIFF-APPELLANT

v.

### COOPERATIVA DE VIVIENDA JARDINES DE SAN IGNACIO; et al

DEFENDANTS-APPELLEES

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO

_____

### BRIEF FOR APPELLANT PRISCILLA BATISTA

_____

TO THE HONORABLE COURT:

COME NOW, Plaintiff-Appellant, Priscilla Batista ("Plaintiff-Appellant" or "Mrs. Batista") herein represented through the undersigned attorney, and very respectfully, submits the following Brief for Appellant:

### I.    STATEMENT OF JURISDICTION

The District Court had jurisdiction over the matter pursuant to 28 U.S.C. § 1338(a) of the Judicial Code, since the action below arises under the Fair Housing

Act, 42 U.S.C. §§ 3601 *et. seq*, in an action where Plaintiff-Appellant filed claims and denounced violations of the Fair Housing Act arising from acts of discrimination, retaliation, and failure to reasonably accommodate her. See Appendix, at pp. 1-13. Plaintiff-Appellant also filed for injunctive relief and award of damages pursuant to the Fair Housing Act. See, Appendix, at pp. 10-13.

Jurisdiction of this Court rests on Title 28 U.S.C. §§119, 451, and 1291, which grant jurisdiction over appeals from final orders and judgments of the District Courts, including the United States District Court for the District of Puerto Rico. Under the provisions of Rule 4 (a)(1)(A) of the Federal Rules of Appellate Procedure, the captioned appeal was timely filed.

In the case at hand, Appeal No. 13-1817[1], the District Court entered Judgment on May 15, 2013 (Addendum, at p. 3), granting summary judgment in favor of Defendants-Appellees, dismissing the case in its entirety[2]. The summary judgment granted was detailed by the District Court in an Opinion and Order also dated May 15, 2013 (Addendum, at pp. 4-19). A properly filed Notice of Appeal was entered with the District Court on June 12, 2013 (Addendum, at pp. 1-2).

---

[1] USDC Civil No. 10-1953 (GAG-CVR)

[2] It should be noted that, within the Opinion and Order issued by the District Court granting summary judgment for Defendants-Appellees (Addendum, at pp. 4-19), the District Court declared "MOOT" Defendants' Motion to Dismiss (Addendum, at p. 19). Curious enough, the District Court failed to act upon a request for dismissal (Motion to Dismiss) that allowed for no controversy or issues as to the facts at hand, yet acted upon a motion (Motion for Summary Judgment) vulnerable to genuine issues of fact which, unfortunately, were ignore in reaching a decision.

## REASONS WHY ORAL ARGUMENT SHOULD BE HEARD

Pursuant to Local Rule of Appellate Procedure 34(a), Plaintiff-Appellant, respectfully requests from this Honorable Court to hear oral arguments on this appeal because, pursuant to Federal Rule of Appellate Procedure, this appeal: 1) is not frivolous; 2) one of its dispositive issues have not been authoritatively decided in this Circuit, that is, this is a case of first impression in this Circuit as recognized by the District Court, who in its Opinion and Order (Addendum pp. 4-19), recognized it had to turn to other circuits for guidance in issuing its ruling since "[t]here is not much case law under the FHAA in this circuit." (Addendum, at p. 13, quoting Astralis Condo. Assoc. v. Velez-Aviles, 620 F.3d 62, 66 (1st Cir. 2010)). The facts and legal arguments are adequately presented in the brief and record, all of which significantly aid the decisional process.

Plaintiff-Appellant respectfully understands a judgment of this Honorable Court of Appeals in this case should not be attained without oral argument, since the result will have a wide range impact on the availability of "reasonable accommodations" for the disabled who qualify for Federal Housing benefits. Oral argument presents an additional opportunity to clarify factual considerations, and/or interpretations as well as the applicability of particular laws and precedent.

9

For all the foregoing reasons we believe this Honorable Court should pay some additional attention to arguments, beyond those contained in this brief, at oral argument.

## II.    STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

The main issue presented for review in this case is the District Court's failure to acknowledge genuine issues and factual disputes pertaining to Plaintiff-Appellant' reasonable accommodation request pursuant to Section 804(f)(3) of the Fair Housing Act [42 U.S.C §3604(f)(3)], the Fair Housing Amendment Act and Section 504 of the Rehabilitation Act of 1973 [29 U.S.C. §794] , as amended, and other related criteria. The District Court confused the inquiry of the "reasonableness" of the accommodation requested by this handicapped person, by focusing on a mistaken perception of the financial advantages, disadvantages and/or burdens such accommodation would impose upon the parties. An accurate perspective of the situation, as discussed hereinafter, shows there was no such advantage, disadvantage, financial burden, impact or otherwise. The District Court erred in shunning the real issue, that is, whether the facts and proposed evidence sustained the reasonableness (or not) of the accommodation requested by Plaintiff-Appellant under the particular circumstances. Answering such query entails a trial by jury to evaluate the different set of facts and evidence presented by the parties, in order to rule upon genuine issues of fact relevant to this inquiry.

10

Moreover, The District Court's mistaken focus on economic issues ("failure to pay rent"[3]) leads to flawed conclusions of "economic discrimination" instead of "disability-based discrimination" or simply stated, the discrimination claimed by the Plaintiff-Appellant in this case. In doing so, the District Court denied additional claims based on discrimination and retaliation. Again, considerations of genuine issues of fact are here present and must be evaluated and adjudicated in a jury trial as requested by Plaintiff-Appellant.

Accordingly, the following issues will be discussed at length in this brief:

**A. The District Court erred when it summarily dismissed Appellant's complaint on grounds that the Appellant's request for reasonable accommodation was not reasonable.**

**B. The District Court erred in dismissing Plaintiff's Disparate Treatment claims simply because the Disparate Treatment claim had it's "roots" in economic discrimination.**

**C. The District Court erred in dismissing plaintiff's retaliation on grounds that it lacked jurisdiction to entertain such claim and instead should have been made to this court as the forum with jurisdiction to entertain retaliation claims where the adverse action is a failure to comply with a Consent Order**

## III.    STATEMENT OF THE CASE

---

[3] See, Addendum, at p. 17.

The underlying substantive claims in this case stem from the denial of rights afforded by several applicable federal laws to certified handicapped individuals such as Plaintiff-Appellant. This case deals with discrimination consisting in the denial of reasonable accommodation under the Fair Housing Act, the Rehabilitation Act of 1973 and other related laws protecting the handicapped. It deals with whether the granting of a limited exception to basic housing occupancy guidelines (an additional room; a three bedroom room unit instead of a two bedroom room) is reasonable for a handicapped plaintiff who has proffered medical evidence showing such need, particularly where the government agency has interpreted such occupancy exceptions for the disabled person as reasonable.

This case also evaluates the sufficiency of the evidence and the level of detailed required in summary judgment to oppose dismissal of housing discrimination claims. It also considers whether adverse reactions in retaliation claims can be supported by the failure to comply with a consent order in another case of discrimination in favor of the party claiming retaliation.

## IV.  STATEMENT OF THE FACTS

The following factual statements were proposed by the Plaintiff-Appellant as admitted facts in its Opposing Statement of Material Facts (Appendix, at pp. 456-476), including:

12

Plaintiff-Appellant, Mrs. Batista, suffers from mobility impairment due to osteoporosis and fibromyalgia that qualifies her as legally disabled. Appendix, at pp. 419, 478 ¶ 5. She also suffers from severe fatigue and depression, migraines, blood anemia, hypersensitivity to sound, and colon irritability. Appendix, at p. 478 ¶ 5. Consequently, she qualifies as a member of a protected class under the Fair Housing Act. See, Addendum, at p. 6.

Co-defendant-Appellee, Cooperativa De Viviendas Jardines de San Ignacio (hereinafter "Coooperativa") is a cooperative housing facility that consists of 514 apartment units. Some of the residents at the Cooperativa are recipients of Section 8 rent subsidies, granted under entitlements from Congress, administered through HUD. See, Addendum, at p. 6.

The Cooperativa was well aware of Mrs. Batista's disability. Appendix, at pp. 419, 478 ¶ 5. Indeed, they had previously accommodated Plaintiff-Appellant by providing her with a parking space in close proximity to the building because her records at the Cooperativa indicated she was disabled. See, Addendum, at p. 7.

Certain U.S. Department of Housing and Urban Development ("HUD") and Federal Housing Administration ("FHA") regulations are pertinent inasmuch as Cooperativa leases apartments (units) to recipients of Section 8 of the Loan Management Set Aside Housing Assistance Payment ("Section 8"). Section 8 provides housing subsidies for low-income tenants. 42 U.S.C. §1437f. Plaintiff-

13

Appellant and approximately 23 or 24 other Cooperativa tenants qualified for and enjoyed benefits under the statute. Addendum, at p. 6.

Since 1983, Mrs. Batista has resided in the same three-bedroom apartment unit at Cooperativa. Her two children previously resided with her and moved out in 1997 and 2003. Addendum at pp. 6-7. The Cooperativa was well aware of this fact and never requested Mrs. Batista to move from her three bedroom apartment until the year 2009. Appendix, at p. 457 ¶¶ 2-3.

On October 4 and 5, 2007 the Puerto Rico Housing Finance Administration ("PRHFA") "conducted a management review of the Cooperativa", observing that four units, including Plaintiff's, were overhoused. Appendix, at p. 420 ¶ 8. It also stated, "[U]nit size was not appropriate for household composition in four of five cases evaluated, including Unit 1714A", as referring to Plaintiff-Appellant's unit. Appendix, at p. 461; Addendum at p. 7. Plaintiff-Appellant admitted she resides in Unit 1714A. Addendum at p. 7. In said review, Mr. Batista was among the cases identified with potential "unit size not appropriate for household composition", a conclusion reached by the PRHFA relying on basic guidelines and general rules. The PRHFA's recommendation did not take into account any consideration as to particular exceptions or accommodations needed "…when such accommodation may be necessary to afford a person with disabilities equal opportunity to use and enjoy a dwelling unit and the public common areas." Appendix, at p. 461 ¶ 8.

14

Appellant-Plaintiff was notified by Cooperativa, verbally and/or in writing, of the Cooperativa's intent to move her to a smaller two bedroom unit within lower floors of the building, allegedly relying on HUD regulations (but without taking into consideration "reasonable accommodation" needs of the Plaintiff). See, Appendix, at p. 463 ¶ 12. See also Appendix, at pp. 459 ¶ 5, 461 ¶¶ 8-9, 462 ¶ 10 and 480 ¶ 9. See also, Addendum at pp.7-8.

At the time she was informed by Cooperativa of the intention to relocate her, Mrs. Batista was physically and emotionally immersed in case HUD ALJ08-063-FH/FHEO No. 02-08-0398 against Cooperativa de Vivienda Jardines de San Ignacio, a claim based on discrimination against a handicapped person (Plaintiff-Appellant). See, Appendix, at p. 460 ¶ 7.  Mrs. Batista eventually obtained a consent order favoring her. Unfortunately said consent order was violated later by Defendants-Appellees by, among other things, facts and circumstances subject of the claims asserted in the captioned case. Appendix, at p. 462 ¶ 10.

HUD resolved a separate claim in case 063-FH/FHEO No. 02-08-0398 brought against Defendants-Apelles regarding the Cooperativa's failure to accommodate Mrs. Batista. In that case Coooperativa allegedly sought to create a more sanitary environment by closing garbage depositories on each floor of the Cooperativa's building, but they neglected to give Mrs. Batista a key to the garbage

15

depository on her floor. Taking out the garbage beyond her own floor posed an undue hardship on Plaintiff-Appellant because of her disability. She requested a key to the garbage room on her floor multiple times, but the Cooperativa failed to accommodate her, and a HUD administrative law judge ("ALJ") sanctioned the Cooperativa. See, Addendum, at p. 11.

The ALJ required Defendants to give Plaintiff a key to the depository, pay her $10,000, write her an apology note, and "[r]emove any and all blemishes, sanctions, etc, arising out of this case, from Complainant-Intervenor's record, including any outstanding fees and the revocation of her voting privileges." The District Court concluded that wording of this provision indicates that the ALJ mandated removal of the blemishes and sanctions pertaining only to Cooperativa's failure to provide access to the depository. See, Addendum, at p.11. Yet, at that time Mrs. Batista owed no fees, expenses, blemishes or sanctions pertaining to the depository; she allegedly owed other prior dues, unrelated to the depository. Appendix, at p. 483 ¶¶ 18 and 20.

While the controversy over the access to the garbage depository was ongoing, the Cooperativa sent Mrs. Batista a letter on November 24, 2008, notifying her that a two bedroom apartment was available and offered to transfer her to that two bedroom unit and that she abandon the three bedroom unit in which she had been living for over 25 years. Appendix, at p. 480 ¶ 9.

16

Mrs. Batista requested more time to evaluate the Cooperativa's proposed move from her three bedroom unit to a two bedroom apartment. Appendix at p. 463 ¶ 11. She responded on March 10, 2009; Mr. Batista submitted to the Cooperativa a request for a reasonable accommodation asking to remain in the three-bedroom apartment given her medical condition and certified disability. Appendix at p. 463 ¶ 11. See also, Appendix, at p. 481 ¶ 13.

The Cooperativa did not conduct and evaluation, analysis, comparison, investigation, consultation or other necessary exercise (medical or otherwise), on their own, to grant or deny the "reasonable accommodation" requested by Plaintiff-Appellant, limiting their efforts to a noise level study and a referral to HUD and/or PRHFA for the agencies' evaluation of the reasonable accommodation request. Without requesting any documentation, records or other evidence from Plaintiff-Appellant as to the medical condition sustaining her request for "reasonable accommodation" the Appellees neglected their own legal obligation and policies to properly evaluate and adjudicate Plaintiff's request for "reasonable accommodation". To the contrary, the Cooperativa limited their analysis of the request for a reasonable accommodation to a noise level study. Appendix, at pp. 481-82 ¶ 13, 468-69 ¶ 20.

Plaintiff-Appellant's need for a three-bedroom unit based on her medical condition was supported by a letter from María Arce, PhD, a licensed Clinical

17

Psychologist. Appendix, at p. 482 ¶ 14.  Moreover, Defendants-Appellees never asked Mrs. Batista for the medical documentation that supports her request for reasonable accommodation, much less for an authorization from her to have access to her medical records pursuant to HIPPA legal requirements. Appendix, at p. 481 ¶ 13.

While HUD was entertaining consultations with the Cooperativa over Mrs. Batista's request for "reasonable accommodation", HUD received medical documentation and interviewed Mrs. Batista's physicians who confirmed her need of the three-bedroom unit.  Appendix at p. 481-82 ¶¶ 13-15.

On July 31, 2009 Mrs. Batista was told by the Cooperativa that she had been declared by the Defendant-Appellees' Board of Directors a non-member of Cooperativa. Appendix, at p. 481 ¶ 12.

Nevertheless, on August 31, 2010, Mrs. Batista was asked to collect and fill out the necessary documentation to recertify herself as a Section 8 member, and she was actually recertified with the signature of the administrator. Appendix at p. 458-59 ¶ 4.

And, on top of the aforementioned, on June 14, 2011 Ms. Batista met with Ms. Yolanda Pérez, Coopertiva's Project Manager at HUD's local office, who informed Plaintiff-Appellant that her housing benefits had not been cancelled and that the Puerto Rico Housing Finance Authority ("PRHFA") was still issuing the

corresponding Section 8 vouchers and sending them to the Co-defendant-Appellee Cooperativa, for the benefit of Plaintiff-Appellant. Appendix, at p. 458 ¶ 4. See also, Appendix, at p. 483 ¶ 18.

Moreover, Cooperativa sent three letters to Mrs. Batista on 1/4/2011, 1/12/2011 and 1/19/2011 asking her to pick-up, at the administration office, the applicable section 8 check ("utility allowance" – "negative rent"). Appendix, at p. 458 ¶ 4.

Nevertheless, the Cooperativa has engaged in discriminatory and retaliatory conduct against Mrs. Batista, by instituting multiple claims against her, attempting to collect amounts not owed by her, denying her the right to vote in the Cooperativa's assemblies, preventing access to visitors to her apartment by prohibiting them from entering the premises, breaching applicable consent and/or conciliation settlement agreements and threatening to evict her and terminate her benefits under Section 8. Appendix at p. 459-60 ¶ 5.

Plaintiff-Appellant filed a charge against Defendant-Appelle: Batista Ocasio, Priscilla v. Coop. Jardines de San Ignacio, et al., Title VIII No. : 02-10-0495-8, on January 22, 2010, with HUD. The complaint included some of the allegations, claims, facts, requests and/or other details included in the initial document (Housing Discrimination Complaint, dated January 22, 2010). Appendix, at p. 472 ¶ 24. See also, Appendix, at pp. 738-754. The referred process evolved into the

19

eventual Determination of No Reasonable Cause, dated July 21, 2010, in which HUD advised Plaintiff "…Notwithstanding this determination by HUD, the Fair Housing Act provides that the Complainant may file a civil action in an appropriate federal district court or state court within two years after occurrence or termination of the alleged discriminatory housing practice". Appendix at pp. 755-760.

Cooperativa simple echoed HUD's determination (Determination of No Reasonable Cause), without any medical evaluations or considerations, to deny Plaintiff-Appellant's request for reasonable accommodation. Appendix, at p. 482 ¶ 15. Thus, the captioned case ensued at the District Court, Appendix, at pp. 1-13; now subject to this Honorable Courts' review.

## V.   SUMMARY OF THE ARGUMENT

The fundamental conclusion of the District Court's judgment is that, Appellant-Plaintiff's request for a **reasonable accommodation** was not reasonable, that her claims of **disparate treatment** (**discrimination**) were not properly supported with admissible evidence and all **retaliation** claims stem from separate proceedings that should not be addressed for jurisdictional reasons in this case. Plaintiff-Appellant respectfully disagrees with each of the District Court's conclusions and respectfully requests that Judgment of the District Court

(Addendum at p. 3), and its Opinion and Order (Addendum at pp. 4-19), be reverse

on the grounds that follow.

## VI.    ARGUMENT

### A.    STANDARD OF REVIEW

This Honorable Court must review the district court's grant of summary

judgment *de novo*. Santoni v. Potter, 369 F.3d 594, 598 (1st Cir., 2004); Wojcik v.

Mass. State Lottery Comm'n, 300 F.3d 92, 98 (1st Cir. 2002). Summary judgment

is appropriate where the evidence shows that "there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(c).

Moreover, the preclusive effect of a prior "judgment", as in this case was

adjudicated by the District Court, is a question pure law, and "it too is subject to de

novo review". Gonzalez v. Banco Central Corp., 27 F.3d 751, 755 (1st Cir. 1994).

See also; Wolf v. Gruntal & Co., 45 F.3d 524, 527 (1st Cir. 1995).   As such, the

judgments object of this appeal are subject to plenary review.   Porn v. National

Grange Mut. Ins. Co., 93 F.3d 31, 33 (1st Cir. 1996).

For purposes of summary judgment, a fact is "material" if it "might affect

the outcome of the suit" under the applicable legal standard. Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). A

21

factual issue is "genuine" only "if a reasonable jury could resolve it in favor of either party." <u>Basic Controlex Corp., Inc. v. Klockner Moeller Corp.</u>, 202 F.3d 450, 453 (1st Cir. 2000). In deciding whether a genuine issue of material fact exists, this Honorable Court must construe the evidence in the light most favorable to the non-moving party. <u>Flowers v. Fiore</u>, 359 F.3d 24, 29 (1st Cir. 2004). It is well settled that the language of Rule 56(e) FRCP does not mean that a moving party is automatically entitled to summary judgment if the opposing party does not respond. The court must inquire whether the moving is entitled to summary judgment <u>as a matter of law</u>. <u>Jaroma v. Massey</u>, 873 F.2d 17, 20 (1st Cir. 1989). See also, <u>De la Vega v. San Juan Star, Inc.</u>, 377 F.3d 111, 117-116 (1st Cir. 2004).

### B.    ARGUMENT OF ISSUES PRESENTED FOR REVIEW

<u>Reasonable Accommodations and the Fair Housing Act</u>

**The District Court erred in determining that Plaintiff-Appellant's request for reasonable accommodation was not reasonable.**

The FHAA prohibits discriminatory housing practices based on a person's handicap. 42 U.S.C. § 3604(f). It outlaws discrimination "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap" of an individual. *Id.* § 3604(f)(2). Discrimination includes a "refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [handicapped persons] equal

22

opportunity to use and enjoy a dwelling." *Id.* § 3604(f)(3)(B). See also, Astralis Condo. Assoc. v. Velez-Aviles, 620 F.3d 62 (1st Cir. 2010). A defendant must "incur reasonable costs and take modest, affirmative steps to accommodate the handicapped as long as the accommodations sought 'do not pose an undue hardship or a substantial burden.'" Taylor v. Harbour Pointe Homeowners Assoc., 690 F.3d 44, 49 (2d Cir. 2012)

Legal authority to determine "reasonable accommodation" and what "undue hardship" rights are under the Fair Housing Act are also found under the Americans with Disabilities Act (ADA) 42 U.S.C. §§ 12101-12213, which is generally persuasive in assessing handicapped discrimination claims under the FHAA. Astralis at 66; Tsombanidis v. W. Haven Fire Dep't, 352 F.3d 565, 573 n. 4 (2d Cir. 2003) ("Due to the similarities between the statutes, we interpret them in tandem."). Likewise, the Courts also look at how reasonableness has been interpreted under the Rehabilitation Act. Sch. Bd. of Nassau Cty. v. Arline, 480 U.S. 273, 288 n.17 (1987) (holding undue hardship includes undue financial burden under Rehabilitation Act).

The Supreme Court has made it clear that Housing Discrimination does not require a showing of intent, as other cases of intentional discrimination. As the Supreme Court explained, "[d]iscrimination covered by the FHA[A] includes a refusal to make reasonable accommodations." City of Edmonds v. Oxford House,

23

Inc., 514 U.S. 725, 729, 115 S.Ct. 1776, 131 L.Ed.2d 801 (1995) (citing 42 U.S.C.
§ 3604(f)(3)(B)) (internal quotation marks omitted).

Since the ADA is persuasive in the analysis of the "reasonableness" of an
accommodation and the FHA's anti-discrimination provision must be interpreted in
tandem with the ADA, we hereby discuss the "reasonableness" and costs analysis
in ADA cases.  Courts have said that in determining whether an accommodation is
"reasonable", one must look at the costs of the accommodation in relation to its
benefits. See, e.g., Monette v. Electronic Data Sys. Corp., 90 F.3d 1173, 1184 n.10,
5 AD Cas. (BNA) 1326, 1335 n.10 (6th Cir. 1996); Vande Zande v. Wisconsin
Dept. of Admin., 44 F.3d 538, 543, 3 AD Cas. (BNA) 1636, 1638-39 (7th Cir.
1995).  In, US Airways, Inc. v. Barnett, 535 U.S., 122 S. Ct. 1516, 1522 (2002), the
Court explained that "in ordinary English the word 'reasonable' does not mean
'effective'. It is the word 'accommodation', not the word 'reasonable', that
conveys the need for effectiveness." Id.

### *Prima facie* case

In Astralis this court laid out the general requirements to benefit from a
reasonable accommodation: First, "a claimant must show that [s]he is handicapped
within the [FHAA] and that the party charged knew or should reasonably have
known of [her] handicap." Id. (citations omitted). Second, the "claimant must
show that [s]he requested a particular accommodation that is both reasonable

24

and necessary to allow [her] an equal opportunity to use and enjoy the housing in question." Id. Lastly, "the claimant must show that the party charged refused to make the requested accommodation." Astralis Condo. Assoc., 620 F.3d at 66. Indeed the District Court recognized and the parties stipulated that Plaintiff-Appellant met the first and third prongs. Addendum, at p.13. The controversy, at summary judgment, was limited to whether Mrs. Batista demonstrated that her request to stay in the three bedroom apartment instead of moving to a two bedroom accommodation was reasonable and necessary to allow [her] an equal opportunity to use and enjoy the housing in question." See, Addendum, at p. 10.

If a tenant establishes a *prima facie* case, and the requested accommodation is reasonable, then the failure to accommodate claim should be successful. See 42. U.S.C. §3604(f)(3)(B) (2006). Accommodations that "involve substantial modifications to existing policies, or even the creation and implementation of new policies which are beneficial to the [tenant or applicant] with respect to the particular disability," may still be considered reasonable, "so long as making such accommodation is not oppressive to the landlord." Susan B. Eisner, There's No Place Like Home: Housing Discrimination Against Disabled Persons and the Concept of Reasonable Accommodation Under the Fair Housing Amendments Act of 1998 , 14 N.Y.L. SCH . J. HUM . RTS . 435, 447 (1998).

25

Under the standard of §3604(f)(3)(B), an accommodation will not be considered unfairly oppressive unless it causes an undue financial and administrative burden on the landlord or results in the fundamental alteration of the housing provided.  Schwarz v. City of Treasure Island, 544 F.3d 1201, 1222, 1224 (11th Cir. 2008) (requested zoning variance in an area that would undermine city's goal of creating stable, single-family neighborhoods constitutes a fundamental alteration; however, similar variance in areas surrounded by multifamily dwellings with high turnover rates could be reasonable); Giebeler v. M & B Assoc., 343 F.3d 1143 (9th Cir. 2003) (requested exemption to no-cosigner rule did not create undue burden when accommodation "would not require [landlord] to accept less rent [and] would not otherwise alter the essential obligations of tenancy"); Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of Twp. Of Scotch Plains, 284 F.3d 442, 446 (3d Cir. 2002) (requested zoning variance unreasonable "largely because of the problems with traffic safety and emergency vehicle access" that proposed elderly care facility was likely to cause).

Plaintiff-Appellant, Mrs. Batista, is not requesting here a zoning variance that would undermine the creation of stable single-family neighborhoods.  Contrary to the District Court's conclusion, Mrs. Batista is no requesting the landlord Cooperativa to accept less rent nor to be burdened by having to absorb her rent

payment[4]; she is neither requesting additional monies from HUD under section 8 nor a change in HUD policies regarding housing occupancy under section 8. Plaintiff-Appellant's request for reasonable accommodation was well within the parameters of FHA and the Rehabilitation Act that, if granted, would entail her to remain eligible for the same subsidy she's been receiving from HUD for many years despite her housing composition. In other words, obtaining the "reasonable accommodation" requested would continue the *status quo* as to her rent payments (through HUD's section 8) to Cooperativa.  She was simply asking to remain within the same subsidy she has been receiving over a decade for the same apartment, in order to ameliorate the effects of her disability.  Nor is her request creating any safety problems.  Thus the <u>Schwarz</u>, <u>Giebeler</u> and <u>Lapid-laurel</u> cases are all distinguishable from Plaintiff-Appellant's case.  Likewise, her request presents no pretension for a "financial advantage" or alterations to "essential obligations of tenancy"[5], but an "equal opportunity" to remain in her unit, as an acknowledged exception to HUD's housing (family composition) requirements, due to the needs her disability presents.

---

[4] See, Appendix, at p. 474 ¶¶ 4-5. Cooperativa had not even considered at that time what kind of financial or administrative burden, if any, granting Plaintiff-Appellant's reasonable accommodation would entail. Cooperativa's denial was obviously not predicated on financial burden considerations.

[5] Upon granting the "reasonable accommodation requested by the Plaintiff-Appellant, The landlord [Cooperativa] would continue to receive the same rent from the Section 8 program.

Even if the subsidy received under Title 8 would be less than rent for the three bedroom apartment (and only proper for a two bedroom apartment) the Supreme Court has held that plaintiffs are entitled to show that special circumstances exists which would make the accommodation "'reasonable' on the particular facts." U.S. Airways v. Barnett, 535 U.S. 391, 405 (2002).

In the case at bar the Appellant-Plaintiff submitted medical evidence showing that special circumstances merited her enjoying the three bedroom unit. Under U.S. Airways even when a requested accommodation would be oppressive for most landlords, a tenant or applicant is still entitled to show that special circumstances make the accommodation reasonable in his/her particular case. Plaintiff made such demonstration with medical evidence that was never disputed[6]. Both Defendants-Appellees and the Court rejected [ignored] such special showing in their refusal to grant the accommodation.

Furthermore, HUD's own guidelines for federally assisted multifamily housing programs provide for specific unit size based on the number, gender, and relationship of family members. However, under the agency guidelines exceptions, completely ignored by the District Court and by the Defendants-Appellees, a

---

[6] Even though the District Court acknowledged certain disputes as to the extent and sufficiency of the medical documentation substantiating Plaintiff-Appellant's request for reasonable accommodation (Addendum at p. 9), which in itself should have been a strong indication of the need for a trial in this case and denial of summary judgment as the proper course of action.

28

person with a disability may request an exception to this policy, both to allow for a

live-in aide as well as for other reasons relating to the participant's disability, to

wit:

> Owners may consider the size of the unit, the size of the bedrooms,
> and the number of bedrooms so long as their policy allows for family
> preferences (within HUD guidelines) to be considered. As owners
> develop and implement occupancy standards, they must take into
> consideration the following factors:
> a. The number of persons in the family;
> b. The age, sex and relationship of family members;
> c. **The family's need for a larger unit as a reasonable
> accommodation;** and
> d. Balancing the need to avoid overcrowding with the need to avoid
> underutilization of the space and unnecessary subsidy.

HUD HANDBOOK 4350.3, OCCUPANCY REQUIREMENTS OF SUBSIDIZED
MULTIFAMILY HOUSING PROGRAMS, REV-1, CHG-3, 2-39 (June 2009)
[hereinafter HUD HANDBOOK 4350.3] § 3-23E.4.c. Available at
http://portal.hud.gov/hudportal/documents/huddoc?id=43503c3HSGH.pdf, (Our
emphasis)

No such factual analysis, as required by HUD's guidelines, was ever made

by Defendants-Appellees with respect to Mrs. Batista. Moreover, the District

Court's analysis rejected factor "c" at the suggestion additional costs or financial

burden may be involved for the landlord (Cooperativa), especially when such need

automatically results in treating the disabled as class with "privileges" that places

he/she on a higher "footing" than the non disable. If the District Court's Opinion

and Order is made the law in this First Circuit, a family where one of the family

members is a child with autism who cannot share a room with a sibling would be

29

ineligible for an extra room as a reasonable accommodation, contrary to the letter of the agency guideline. Public Housing owners may argue that this is an undue financial burden, but the relatively low cost of paying the difference for one family should not rise to such a level as acknowledge in HUD's Public Housing Occupancy Guidebook which allows for exceptions to the occupancy size, in the case of disabled persons:

> Families of the appropriate size shall occupy units. This maintains the usefulness of the units, while preserving them both from excessive wear and under-utilization. It is also fully compliant with HUD rules related to Occupancy Standards. The following principles govern the size of unit for which a family will qualify. Generally, two people are expected to share each bedroom, **except that units will be so assigned that:**
> · […].
> · **Exceptions to the largest permissible unit size may be made in case of reasonable accommodations for a person with disabilities.**

Public Housing Occupancy Guidebook, at p. 64, June 2003, available at http://portal.hud.gov/hudportal/documents/huddoc?id=DOC_10760.pdf          (Our emphasis).

In our case, the Agency (HUD) has apparently rejected any interpretation of "reasonable accommodation" to mean that the "reasonableness" necessarily excludes granting a disabled individual subsidy for an extra room from an apartment she has enjoyed for three decades, on the grounds that all costs increasing accommodations are unreasonable.  The "statute" does not define

30

"reasonableness".  Agencies and Courts define reasonableness in these cases and if anything is ambiguous here it is the meaning of "reasonable".  When a court reviews an agency's construction of the statute which it administers, such as the HUD guidelines regarding reasonable accommodations, it is confronted with two questions. <u>City of Arlington, Texas v. FCC</u>, 133 S. Ct. 1863, ___, 185 L. Ed. 2d 941, ___ (2013),  *citing* <u>Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc</u>., 467 U.S. 837 842 (1984) First, applying the ordinary tools of statutory construction, the court must determine "whether Congress has directly spoken to the precise question at issue.  Id.  If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." <u>Chevron</u>, at 842-843.   But "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." <u>Chevron</u>., at 843.

The statute here is silent as to the definition of the word "reasonable", in a "refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [handicapped persons] equal opportunity to use and enjoy a dwelling." 42 U.S.C. §3604(f)(3)(B).  The intent of Congress is not clear as to whether "reasonable" includes size increases to a subsidized unit.  Therefore, the Court must determine whether the

agency's interpretations of "reasonableness", where unit sizes are increased to accommodate disabled individuals, are "based on a permissive construction of the statute." Those Agency interpretation are found in the cited HUD guidelines: HUD HANDBOOK 4350.3, OCCUPANCY REQUIREMENTS OF SUBSIDIZED MULTIFAMILY HOUSING PROGRAMS, REV-1, CHG-3, 2-39 (June 2009) [hereinafter HUD HANDBOOK 4350.3] § 3-23E.4.c., available at http://portal.hud.gov/hudportal/documents/huddoc?id=43503c3HSGH.pdf, (Our emphasis); and  the Housing and Urban Development's Public Housing Occupancy Guidebook, at p. 64, June 2003, available at http://portal.hud.gov/hudportal/documents/huddoc?id=DOC_10760.pdf. The answer is obvious: the guidelines are based on a permissive construction of the statute.  Nowhere does the statute provide for an exclusion of any accommodation that increase costs (in our case, HUD's costs not the landlord's).

Against a reasonable statutory interpretation of the Agency, which allows for such size increases (in our case, from two to three rooms), the District Court recognized that a defendant must "**incur reasonable costs** and take modest, affirmative steps to accommodate the handicapped" (Our emphasis). However, the Court adopted a standard much higher that that provided in HUD's interpretation of its statute, by requiring that the affirmative step and accommodation sought "does not pose an

32

undue hardship or a substantial burden." Addendum, at p13, quoting Taylor v. Harbour Pointe Homeowners Assoc., 690 F.3d 44, 49 (2d Cir. 2012).

The District Court recognized the defendants must have "had an idea of what accommodation [Plaintiff] sought before . . . incurring liability for failing affirmatively to grant a reasonable accommodation." Id. [citing Tsombanidis v. West Haven Fire Dep't, 352 F.3d 565, 578 (2nd Cir. 2003)]. Here there is no doubt that Defendants-Appelles knew what the accommodation was, namely an exception from HUD's guidelines to remain in a unit with an additional bedroom based on her disability related needs.

The District Court was also well aware of the nature of the request. Namely, Plaintiff-Appellant stated she needed to remain in her three-bedroom unit instead of the two bedroom apartment (pursuant to the HUD guidelines under normal conditions), to have one room for her stationary bicycle and exercise equipment, and another for her arts and crafts workshop and equipment; both rooms part her rehabilitation treatment and health improvement medical design. Appendix at pp. 685-86, 481-82 ¶ 14. She even included a doctor's diagnosis and recommendation to prove it. Appendix at pp. 685-86, 481-82 ¶ 14. However, the District Court determined that the request was unreasonable, focusing on the economic burdens such accommodation may create. Addendum at pp. 14-17.

33

The District Court based its conclusion on the Fourth Circuit's decision in Bryant Woods Inn v. Howard Cty., 124 F.3d 597, 605 (4th Cir. 1997). The Court concluded that Bryant Woods stood for the proposition "…that a defendant is not obligated to provide benefits to an individual with a disability when the benefits create a financial advantage unrelated to the individual's ameliorative efforts." Addendum at p. 14 (Our emphasis). However, the District Court had to admit that "Bryant Woods differs from this case because Plaintiff clearly grounds her request in the ameliorative effects of her arts and crafts and stationary bicycling." Id. Nowithstanding, instead of having a jury decide whether the medical evidence was such that it was sufficient to justify the alleged financial advantage to the disabled, the District Court concluded that Bryant Woods instructions were controlling "because Plaintiff requests financial advantage based on her economic status, not an equal opportunity based on her disability." Id. That was never a conclusion of fact before the Court. To the contrary, Plaintiff-Appellant never requested her accommodation based on her economic status but entirely on her disability; there has never been an issue at to her qualifications for Section 8 subsidy based on her economic condition, which is meager at best.

In order to reject the reasonableness of Plaintiff-Appellant's proposed accommodation, the District Court also placed its reliance on the Second Circuits ruling in Salute v. Statford Green Garden Apts., 136 F.3d 293, 302 (2d Cir. 1998).

34

Addendum at p. 15. The Court in <u>Salute</u> reasoned that "people with disabilities stand on the same footing as everyone else." However, <u>Salute</u> was a case dealing with claims filed under the "take one, take all" provision of the United States Housing Act, 42 U.S.C. § 1437f(t)(1)(A). Under such, now repealed part of the Act, owners who participated in the Section 8 program were prohibited from refusing to rent to people because they were Section 8 certificate holders. The Second Circuit allowed for the District Court's exemption of the Act and the plaintiff alternatively also claimed failure to grant a reasonable accommodation by accepting their Section 8 certificates. Before the <u>Salute</u> court were two questions, one of which is relevant to this case: " (B) [..] is such an accommodation a reasonable one that the landlord is therefore required to make?" The Court reasoned that the policy there, namely "not accepting Section 8 tenants", was "economic discrimination", not handicap discrimination and as a result such policy "is not cognizable as a failure to make reasonable accommodations, in violation of § 3604(f)(3)(B)." <u>Salute</u> at 302. Here the policy is not whether Plaintiff-Appellant has been rejected Section 8 vouchers as in <u>Salute</u>, a matter that deals with discrimination based on economic status, but whether a Section 8 voucher that has already been accepted in the past can later be denied because of unit size without taking into consideration that such exception is based on a reasonable accommodation. Therefore, we respectfully

35

submit that the District Court erred in applying <u>Salute</u> to the facts and controversies of our case, which clearly deals with handicap not economic discrimination.

Contrary to the District Court finding of fact to the effect that Plaintiff-Appellant earned in excess of Section 8's eligible income bracket (Addendum at p. 15), Mrs. Batista has always been eligible for Section 8 based on her income. All that she is asking is that she be allowed to used the subsidy with a unit that is larger than the newly proposed unit by one bedroom.

Plaintiff was not seeking to "gain advantage from her disability" by requesting to remain in her three bedroom apartment. She is requesting to accommodate her need to conduct regular exercise and activities in order to live. Nor was plaintiff requesting that HUD not pay the subsidy and Cooperativa to bear the burden. Mrs. Batista was requesting to use her HUD subsidy and that Defendants-Appelles do not forfeit her subsidy. There is no determination on the record that granting Mrs. Batista's request for reasonable accommodation would entail an automatic debarment of her entitlement to such subsidies; to the contrary, she would have remained eligible for the same HUD benefits. And if such debarment were to take place, in the future, Plaintiff-Appellant would be entitled to request the accommodation from HUD itself[7].

---

[7] See, Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §794 et seq. See also, HUD Occupancy Handbook, Chapter 2: Civil Rights and Nondiscrimination Requirements, Subsection 4, sections 2-38 to 2-40.

Dismissal of Disparate Treatment (discrimination) claims

**The District Court erred in dismissing Plaintiff's Disparate Treatment claims simply because the Disparate Treatment claim had it's "roots" in _economic_ discrimination.**

The District Court also erred in dismissing Appellant-Plaintiff's discrimination claims. While supporting dismissal of Appellant-Plaintiff's disparate treatment and/or discrimination claims, the District Court recognized that "…it is a violation of the FHAA to discriminate even if the motive was benign or paternalistic. The plaintiff is only required to show that a protected characteristic played a role in the defendant's decision to treat her differently." Addendum, at p.17, quoting Comm. Servs., Inc. v. Wind Gap Mun. Auth., 421 F.3d 170, 177 (3d Cir. 2005). However, the District Court disregarded that standard in our case, when it held that there was no disparate treatment or discrimination because Appellant-Plaintiff traced the "roots" of the alleged discrimination to "economic discrimination", namely an intent to eliminate Section 8 beneficiaries from the Cooperativa. Id. Yet, the Court did not correctly distinguish between the background economic discrimination ("roots") and the showing of disability discrimination that evolved.

On the one hand, the District Court disregarded the discrimination based on disability regarding Plaintiff-Appellant's consent decree and the retaliatory efforts pursued by Defendants-Apelles as a result of such adverse result; on the other, the

37

Court focused on its own interpretations as to the consent decree's consequence and agreements rather than on the retaliatory conduct stemming from the result, as such conduct affected disability based protected rights (namely "reasonable accommodation" that allowed for deviation, as an exception, from housing guidelines as to family composition in Section 8 subsidized housing units). The District Court characterized as "economic discrimination" attempts by Defendants-Apelles to deny Plaintiff-Appellant's eligibility from Section 8 benefits, because of her family composition and the size of apartment unit she dwelled in, despite her disability condition and the particular "reasonable accommodation" requested thereby[8]. It isn't hard to visualize how Plaintiff-Appellant's position, as a handicapped person protected under several applicable federal laws supporting reasonable accommodation, was particularly troublesome for Defendants-Apelles in light of their "intent to eliminate Section 8 beneficiaries" from Cooperativa. None of the above was considered or entertained by the District Court in reaching its conclusions; due consideration of such realities and premises would have allowed for a clear picture of disparate treatment and/or discrimination, at the very least one encompassing issues in need of further exploration at trial.

---

[8] See, City of Edmonds v. Oxford House, Inc., 514 U.S. 725, 729, 115 S.Ct. 1776, 131 L.Ed.2d 801 (1995) (citing 42 U.S.C. § 3604(f)(3)(B) and explaining how discrimination covered by the Fair Housing Act includes denials of reasonable accommodation).

**The District Court erred in dismissing Plaintiff-Appellant's retaliation claim on grounds that it lacked jurisdiction to entertain such claim and instead should have been submitted to this court as the forum with jurisdiction to entertain retaliation claims where the adverse action is a failure to comply with a Consent Order.**

The District Court dismissed Plaintiff-Appellant's retaliation claims on grounds that the claims involved an adverse reaction to Plaintiff's filing for discrimination and obtaining a Consent Order regarding her right to access to the garbage depository. It was the District Court's understanding that such claims, were a "retaliatory breach" of the Consent Order thus should be brought to this Court of Appeals pursuant to 42 U.S.C. §3612(m), in order to seek enforcement. See, Addendum at p. 18.

Residents are protected from retaliation by the board and management under the Fair Housing Act provisions:

> **It shall be unlawful to** coerce, intimidate, threaten, or **interfere with any person in the exercise or enjoyment of**, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, **any right granted or protected by section 3603, 3604, 3605, or 3606 of this title**. (Our emphasis) 42 USC § 3617

Section 3606(f)(2) of the Fair Housing Act prohibits discrimination "against any person in the terms, conditions or privileges of sale or **rental of a dwelling**, or **in the provision of services or facilities in connection with such dwelling**, because of a handicap of— (A) that person;"   42 USC §   3606(f)(2).

39

Discrimination  under section 3606 includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling;" 42 USC §  3606(f)(3)(B).

The Court held that "[n]one of these claims [of the Consent Decree] find their origins in disability-based discrimination; rather, they arise because Plaintiff is impecunious, unsuccessful in her reasonable accommodation request, and without her Section 8 benefits." Addendum at p. 15. The District Court's factual conclusion is self contradictory. It states that the claims of the Consent Decree are not based on disability discrimination, and yet the Court acknowledges that they arose because plaintiff was "unsuccessful in her reasonable accommodation request." Id.  Furthermore, the Court's factual conclusions do not arise from the factual record at summary judgment, which supports the fact that the Consent Order was "based on discrimination against a handicapped person". Appendix, at p. 462 ¶ 10.

There can be no doubt that the Consent Decree did indeed arise from housing discrimination claims, or as the District Court recognized "because plaintiff was unsuccessful in reasonable accommodation request".

The question before this Court is whether the failure to comply with a Court order because the beneficiary of the Court order has filed for reasonable

40

accommodations and a disparate treatment case is actionable as a separate act of retaliation or whether that Action must necessarily be taken as an enforcement action of the Court order before the Court with jurisdiction and not as a retaliation claim. We believe that the answer to the question is that the failure to enforce the Order because a person has availed himself of rights under the Act is in and of itself a separate act of retaliation for which the District Court had jurisdiction and the Court was not divested from jurisdiction to hear the admittedly "plausible" claim.

To hold that the retaliatory failure to enforce the Consent Order, because Mrs. Batista filed for another reasonable accommodation and included such enforcement among her claims, must be pursued separately in a different forum would be contrary to all similar anti-retaliation actions in other areas of the law. See, National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S. Ct. 2061 (2002). In Morgan, the Supreme Court held "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" Id. at 114, 122 S. Ct. 2061. Federal Courts have extended the rationale in Morgan to exclude any acts that occurred after filing of a discrimination charge. See, e.g., Martinez v. Potter, 347 F.3d 1208, 1210–11 (10th Cir. 2003); McKenzie v. St. Tammany Parish School Bd., 2006 WL 2054391, at *2, *3 (E.D. La. July 19, 2006); Prince v. Rice, 453 F. Supp. 2d 14, 23–24 (D.D.C.

41

2006); <u>Romero–Ostolaza v. Ridge</u>, 370 F. Supp. 2d 139, 148-50 (D.D.C. 2005). What <u>Morgan</u> stands for is that retaliation is a discrete act that is independently actionable. That act would certainly include the failure to abide to a consent order because someone has engaged in the protected activity of seeking a reasonable accommodation with respect to housing rights.

## VII.  CONCLUSION:

**WHEREFORE**, Plaintiff-Appellant respectfully moves this Honorable Court to vacate and reverse the Judgment issued by the District Court on May 15, 2013, inasmuch as Plaintiff-Appellant is entitled to reasonable accommodation, was subjected to discrimination and disparate treatment, and has been a victim of retaliation from Defendants-Appellees. All such conclusions, even though evident *prima facie*, should have and must be evaluated in detail at trial, not at the summary judgment stage where the District Court misunderstood the proffered evidence and denied further consideration of applicable laws protecting the handicapped in light of economic consideration rather than disability related conditions. Accordingly, Plaintiff-Appellant respectfully requests this Honorable Court orders a jury trial to be had in this case.

**RESPECTFULLY SUBMITTED**

In San Juan, Puerto Rico, this 28th day of October, 2013.

42

**DEGUZMÁN LAW OFFICES**
ATTORNEYS FOR APPELLANTS
PO BOX 362738
San Juan, Puerto Rico 00936-2738
Tel.: (787) 756-2765
Fax: (787) 756-4024

**/s/ GUILLERMO F. DE GUZMAN**
Court of Appeals No. 42943
gdeguzman@dgglawpr.com

## CERTIFICATE OF COMPLIANCE WITH RULE 32 (A)

Certificate of Compliance With Type-Volume Limitation,

Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

__X__    this brief contains 7,800 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

_____    this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

__X__    this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, Size 14.

**/s/ GUILLERMO F. DEGUZMAN**

Attorney for Defendants-Appellants

Dated: October 28th, 2013

partneriThe

## CERTIFICATE OF FILING AND SERVICE

**I HEREBY CERTIFY** that on this same date I have sent the requisite five hard copies and the diskette to the Clerk of this Court through FEDERAL EXPRESS MAIL delivery, and that I have served one copy of the Brief by certified mail with return receipt to:

**LUIS A. GUZMÁN DUPONT, ESQ.**
**P.O. Box 191817**
**San Juan, Puerto Rico 00919**
guzmandupont@yahoo.com

I further certify that on this same date I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system.

In San Juan, Puerto Rico, this 28th day of October, 2013.

**DeGuzmán Law Offices**
ATTORNEYS FOR THE PLAINTIFF-APPELLANT
PO BOX 362738
San Juan, Puerto Rico 00936-2738
Tel:   (787) 756-2765
Fax:   (787) 756-4024


**/s/ GUILLERMO F. DE GUZMAN**
Court of Appeals No. 42943
gdeguzman@dgglawpr.com

**No. 11-2113 and No. 11-2433**
_____

UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT
_____

**ADDENDUM**

## INDEX TO THE ADDENDUM

**Page**

1.    Notice of Appeal…………………………..…………….....    1-2

2.    Judgment…………..……………………………………    3

3.    Opinion and Order ……………………….………………    4-19

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **PRISCILLA BATISTA** | **CIVIL NO.: 10-1953 (GAG-CVR)** |
| PLAINTIFF, | |
| VS. | |
| **COOPERATIVA DE VIVIENDA JARDINES DE SAN IGNACIO; CARMEN COUVERTIER MÁRQUEZ; CÁNDIDO COTTO HERNÁNDEZ; MARÍA RAMÍREZ LÓPEZ; CARLOS ROMÁN ESPADA; CRISTINA DÍAZ ATIENZO; CATHERINE RIVERA CALDERÓN; ROSA MALDONADO GONZÁLEZ; and SANTOS COLÓN** | **ACTION FOR DAMAGES** |
| DEFENDANTS. | |

# NOTICE OF APPEAL

**TO THE HONORABLE COURT:**

**COME NOW,** Plaintiff, through the undersigned counsel, and respectfully STATE and PRAY:

Notice is hereby given plaintiff, Priscilla Batista, hereby appeals to the United States Court of Appeals for the First Circuit from the following orders entered in the instant case:

1.    Judgment, entered on **May 15, 2013** (Docket No. 89), pertaining to Opinion and Order dated May 15, 2013 (Docket No. 88), and granting Defendants' Motion for Summary Judgment (Docket No. 65), thus DISMISSING the case.

Plaintiff respectfully requests from this Honorable Court that she be allowed to file and pursue this appeal *in forma pauperis*. See, Motion for Leave to Appeal *In Forma Pauperis* [with attached Affidavit] (Docket No. 91).

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico on June 12, 2013.

I HEREBY CERTIFY that on this same date this document has been electronically filed with the Clerk of the Court using the CM/ECF system which will send notifications of such filing to the counsel of record.

> DE GUZMAN LAW OFFICES
> Co-counsel for Defendants
> P.O. Box 362738
> San Juan, PR 00936-2738
> Tel: (787) 756-2765
> Fax: (787) 756-4024
> E-mail: gdeguzman@dgglawpr.com
>
>
> /s/ GUILLERMO F. DEGUZMAN
> Guillermo F. DeGuzmán
> USDC NO.: 201309

1

2

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF PUERTO RICO

3

4

5

6

7

8

9

10

11

**PRISCILLA BATISTA,**

**Plaintiff,**

v.

**COOPERATIVA DE VIVIENDA**

**JARDINES DE SAN IGNACIO, et al.,**

**Defendants.**

Civil No. 10-1953 (GAG)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## JUDGMENT

Pursuant to the court's Opinion and Order (Docket No. 88), **JUDGMENT** is hereby entered **DISMISSING** Plaintiff's claims against Defendants.

**SO ORDERED**

In San Juan, Puerto Rico this 15th day of May, 2013.

*S/Gustavo A. Gelpí*

GUSTAVO A. GELPÍ

United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

PRISCILLA BATISTA,

Plaintiff,

v.

COOPERATIVA DE VIVIENDA JARDINES
DE SAN IGNACIO, et al.,

Defendants.

Civil No. 10-1953 (GAG)

## OPINION AND ORDER

Priscilla Batista ("Plaintiff") brings suit against the Cooperativa de Vivienda Jardines de San Ignacio ("the Cooperativa") and past and present members of its board of directors, including Carmen Couvertier Marquez, Candido Cotto Hernandez, Maria Ramirez Lopez, Carlos Roman Espada, Cristina Diaz Atienzo, Catherine Rivera Calderon, Rosa Maldonado Gonzalez, and Santos Colon (collectively "Defendants"). Plaintiff alleges violations of the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.*, arising from acts of discrimination, retaliation, and failure to reasonably accommodate. Plaintiff requests temporary and permanent injunctive relief, a temporary restraining order "enjoining any and all attempts by [D]efendants to hold a hearing against [Plaintiff] in an attempt to collect market rent and other amounts not owed by [Plaintiff]," $350,000 in compensatory damages, $500,000 in punitive damages, and attorney's fees. (Docket No. 21 at 10-12.)

Defendants moved to dismiss the complaint for failure to state a claim and to summarily dismiss. (Docket Nos. 64-65.) Plaintiff responded. (Docket Nos. 73, 77.) For the following reasons, the court

**Civil No. 10-1953 (GAG)**

**GRANTS** Defendants' motion for summary judgment at Docket No. 65 and **MOOTS** Defendants' motion to dismiss at Docket No. 64.[1]

## I.    Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see FED. R. CIV. P. 56(a). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted).

The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to support the nonmoving party's case. The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmovant may establish a fact is genuinely in dispute by citing particular evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome

---

[1] Prior to issuing the present ruling, the court held a settlement conference in order to give the parties an opportunity to resolve the controversies at bar. (See Docket Nos. 82, 87.)

Case 3:10-cv-01953-GAG-CVR   Document 88   Filed 05/15/13   Page 3 of 16

Civil No. 10-1953 (GAG)

of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Mun. of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

## II.    Factual and procedural background

The Cooperativa owns and manages a housing cooperative of 514 residents. (Docket No. 65-7 at 2-3.) Certain U.S. Department of Housing and Urban Development ("HUD") and Federal Housing Administration ("FHA") regulations bind it because it leases apartments to recipients of Section 8 Loan Management Set Aside Housing Assistance Payment ("Section 8"). (Id. at 2.) Section 8 provides housing subsidies for low-income tenants. 42 U.S.C. § 1437f (2012). Plaintiff and approximately 23 or 24 other Cooperativa tenants qualified for and enjoyed benefits under the statute. (Docket No. 76-10 at 109.)

Plaintiff suffers from mobility impairment due to osteoporosis and fibromyalgia that qualifies her as legally disabled. (Docket No. 65-7 at 2.) She also suffers from severe fatigue and depression, migraines, blood anemia, hypersensitivity to sound, and colon irritability. (See generally Docket No. 67-1 at 5.) Consequently, she qualifies as a member of a protected class under the Fair Housing Act. Since

Case 3:10-cv-01953-GAG-CVR    Document 88    Filed 05/15/13    Page 4 of 16

**Civil No. 10-1953 (GAG)**

1983, Plaintiff has resided in the same three-bedroom apartment at the Cooperativa. (Docket No. 65-7 at 2.) Her two children previously resided with her and moved out in 1997 and 2003. (Id.; see also Docket No. 76 at 2-3.) She claims she needs three bedrooms to accommodate her belongings and hobbies, such as a stationary bicycle and arts and crafts, which are necessary to ameliorate her many disabilities. (See Docket No. 21 at 5; see also Docket No. 65-2 at 44-47.)

Defendants have a "policy and practice of accommodating disabled tenants," previously accommodating four tenants with parking spaces, five with modified bathrooms, and seven with support animals. (Docket No. 65-7 at 6.) Indeed, Defendant Couvertier testified that Defendants accommodated Plaintiff by providing her with a parking space in close proximity to the building because her records at the Cooperativa indicated she was disabled. (Docket No. 76-10 at 33-34.)

The Puerto Rico Housing Finance Administration ("PRHFA") "conducted a management review of the Cooperativa" on October 4 and 5, 2007, observing that four units, including Plaintiff's, were over-housed. (Docket No. 65-7 at 3; see also Docket No. 71-1 at 6 (stating, "[U]nit size was not appropriate for household composition in four of five cases evaluated[, including] Unit[] . . . 1714A.").) Plaintiff admits she resides in Unit 1714A. (Docket No. 21 at 2.)

On October 24, 2008, Defendants sent Plaintiff a letter stating, "Owner does not implement occupancy standards regarding size and number of bedrooms needed based on the number of people in the family," and elaborated that an over-housed member must transfer to the appropriate sized unit with continued Section 8 assistance or remain in the same unit and pay fair market value. (Docket No. 65-7 at 3.) Defendants also claim they wrote Plaintiff two letters in 2007 and 2008 informing Plaintiff of the availability of a two-bedroom apartment on the first floor of the Cooperativa. (Id.) Defendants

Case 3:10-cv-01953-GAG-CVR    Document 88    Filed 05/15/13    Page 5 of 16

Civil No. 10-1953 (GAG)

subsequently wrote Plaintiff in November 2008 and February 2009 to inform her of the availability of a two-bedroom apartment, and advised Plaintiff that "her continued stay in the unit through April 1, 2009, would result in her having to pay market rent." (Id. at 4.) Defendant neglected to include any of these letters as submissions and Plaintiff does not expressly admit receiving the letters, but Plaintiff concedes that she received notice of Defendants' intention to relocate her to the two-bedroom apartment. (Docket No. 76 at 7.)

Plaintiff responds that the Cooperativa "lacked adequate methods to implement required management policies," and that "PRHFA cautioned [the] Cooperativa of several Section 8 members (some 23 members) [who] were over-housed and/or being transferred, and were being properly advised about applicable policies." (Docket No. 76 at 6.) Plaintiff avers that, in requesting her to relocate, the Coopertiva neglected other considerations "as to particular exceptions or accommodations needed 'when such accommodation may be necessary to afford a person with disabilities equal opportunity to use and enjoy a dwelling unit and the public common areas." (Id.) Indeed, Defendants include a 2007 PRHFA report stating, "Evidence that member Priscilla Batista . . . qualifies as handicap [sic] according to HUD regulations is missing from file." (Docket No. 71-1 at 7.)

On March 10, 2009, Plaintiff submitted another reasonable accommodation request to Defendants. Plaintiff asked Defendants to allow her to stay in her three-bedroom apartment. (Docket No. 65-7 at 4.) Defendants sought assistance from PRHFA and HUD to resolve the matter on at least four occasions, electing to table any increase in Plaintiff's rent until HUD provided guidance. (Id. at 5.) Plaintiff claims Defendants failed to engage in any meaningful evaluation, analysis, comparison, investigation, consultation, or exercise to make an informed decision regarding the reasonable accommodation request,

**Civil No. 10-1953 (GAG)**

instead only performing a noise level test near Plaintiff's suggested relocation and seeking assistance from HUD and PRHFA. (Docket No. 76 at 11-13.)

     Plaintiff admits, however, that a PRHFA response to Defendants' request reads, "In this case your administrative staff should follow the [Cooperativa's] own policy regarding over housed units if the member receives [S]ection 8 subsidy. The [Cooperativa] should offer a smaller unit to the member and require paying the market rent if he/she refuses to transfer to another unit." (Docket No. 65-7 at 5.) The letter also reads, "When the member requests a reasonable accommodation for medical conditions, the Board of Directors and administrative staff must determine the eligibility of each applicant on a case by case basis. Member must provide all documents necessary to prove his/her eligibility." (Id.)

     The parties dispute whether Plaintiff submitted medical documentation substantiating her accommodation request. Plaintiff contends that Defendants never "asked Plaintiff for the medical documentation that supports her request for reasonable accommodation, much less for an authorization from Plaintiff to have access to her medical records pursuant to [the Health Insurance Portability and Accountability Act of 1996 ("HIPAA")]," though she admits HUD "received medical documentation and interviewed Plaintiff's physicians who confirmed her need of the three-bedroom unit" before adjudicating Plaintiff's claim at the administrative level. (See Docket Nos. 65-7 at 6; 76 at 16.)

     Defendants claim that Plaintiff's "participation in [S]ection 8 [] was canceled in order to comply with the Occupancy Requirements of Subsidized Multifamily Housing Programs of the Department of Housing and Urban Development," requirements which ostensibly dictated that Plaintiff either move into new, smaller accommodations or pay fair market value for her three-bedroom apartment. (Docket No. 65-7 at 2.)

Civil No. 10-1953 (GAG)

    Plaintiff alleges that "on June 14, 2011, during a meeting with Ms. Yolanda Perez (Project Manager for [the Cooperativa] at HUD's Puerto Rico local office), that Plaintiff had not been cancelled and that the [PRHFA] was still issuing the corresponding [S]ection 8 vouchers and sending them to [the Cooperativa] for" Plaintiff's benefit. (Docket No. 76 at 3.) Plaintiff buttresses her assertion with letters she received from the Cooperativa after January 1, 2011, requesting her to pick up Section 8 checks from the Cooperativa's administrative office. (See Docket Nos. 76-4-76-6.) Although these letters do not specifically reference Section 8, they request Plaintiff to come to the administrative office to pick up a "negative rent" check, which Plaintiff identifies as her Section 8 benefits. (Id.) However, Defendant Couvertier stated that Plaintiff received her last Section 8 benefit checks in January 2012. (Docket No. 76-10 at 99, 110.) Couvertier claims she filled out and dispersed the Section 8 checks for the Cooperativa during the relevant timeframe and that Plaintiff stopped receiving them in February 2012. (Id.) Plaintiff states she stopped receiving the benefits in January 2011. (Docket No. 76-1 at 23.) Regardless, the parties clarified that Plaintiff no longer receives Section 8 benefits during a settlement conference on May 6, 2013.

    Defendants also respond to Plaintiff's charges by citing their notification to "23 tenants that they had to move to a smaller unit . . . [and that o]ne tenant was reasonably accommodated by being allowed to stay in the unit because her bathroom in her unit was changed from a bathtub to a shower based on her disability." (Docket No. 65-7 at 6.) Plaintiff does not dispute this; rather, she claims that Defendants breached their obligation to consider her specific disabilities when determining whether to grant her accommodation request. (Docket No. 76 at 15-16.) Defendant Couvertier testified that Defendants did not specifically account for Plaintiff's emotional condition, osteoporosis, fibromyalgia, and migraines

Case 3:10-cv-01953-GAG-CVR   Document 88   Filed 05/15/13   Page 8 of 16

Civil No. 10-1953 (GAG)

in the study; instead, they merely relied on the HUD report. (Docket No. 76-10 at 91.)

Around the same time, HUD resolved a separate claim Plaintiff brought against Defendants regarding another purported instance of Defendants' failure to accommodate Plaintiff. Defendants sought to create a more sanitary environment by closing garbage depositories on each floor of the Cooperativa, but they neglected to give Plaintiff a key to the garbage depository on her floor. Taking out the garbage beyond her own floor posed an undue hardship on Plaintiff because of her disability. Plaintiff requested a key to the garbage room on her floor multiple times, Defendants failed to accommodate her, and a HUD administrative law judge ("ALJ") sanctioned the Cooperativa. (See generally Docket No. 68-1.)

The ALJ required Defendants to give Plaintiff a key to the depository, pay her $10,000, write her an apology note, and "[r]emove any and all blemishes, sanctions, etc, *arising out of this case*, from Complainant-Intervenor's record, including any outstanding fees and the revocation of her voting privileges." (Id. at 3) (emphasis added). The wording of this provision indicates that the ALJ mandated removal of the blemishes and sanctions pertaining only to Defendants' failure to provide access to the depository.

On April 12, 2010, Plaintiff filed another complaint with HUD alleging the Cooperativa violated the Fair Housing Act for failure to reasonably accommodate and other retaliatory actions. (Docket No. 65-7 at 6-7.) HUD investigated the complaint and issued a Determination of No Reasonable Cause in Case Number 02-10-0495-8. (Id.; see also Docket No. 67-1 at 6-7 (finding no violation of Title VIII of the Civil Rights Act of 1968, as amended).) Plaintiff filed this suit on October 4, 2010. (See Docket No. 2.) Plaintiff alleges Defendants discriminated against her by 1) instituting multiple claims against her; 2) attempting to collect amounts not owed by her; 3) denying her rights to vote in assemblies; 4)

Civil No. 10-1953 (GAG)

attempting to prevent visitors from entering the premises; 5) breaching applicable consent and/or conciliation settlement agreements; 6) continuously threatening to evict her, and; 7) attempting to terminate her Section 8 benefits. (See Docket No. 76 at 4-5, 15-16.)

III.    **Discussion**

This case arises under the Fair Housing Amendments Act ("FHAA"). "The FHAA prohibits discriminatory housing practices based on a person's handicap," and "outlaws discrimination 'in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap.'" Astralis Condo. Assoc. v. Velez-Aviles, 620 F.3d 62, 66 (1st Cir. 2010) (internal citations omitted). "Discrimination includes a 'refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford handicapped persons equal opportunity to use and enjoy a dwelling.'" Id. (internal citations omitted).

The FHAA consists of three types of claims for perceived discrimination: disparate treatment, disparate impact, and failure to make reasonable accommodations. See id. Plaintiff alleges several instances of discrimination for failure to reasonably accommodate, and, although Plaintiff does not provide any legal arguments substantiating disparate treatment and retaliation claims, the court briefly addresses each in an abundance of caution.

A.    **Failure to Reasonably Accommodate**

The First Circuit outlined a three-step process to assess FHAA reasonable accommodation claims. See id. First, "a claimant must show that [s]he is handicapped within the [FHAA] and that the party charged knew or should reasonably have known of [her] handicap." Id. (citations omitted). Second, the

**Civil No. 10-1953 (GAG)**

"claimant must show that [s]he requested a particular accommodation that is both reasonable and necessary to allow [her] an equal opportunity to use and enjoy the housing in question." Id. Lastly, "the claimant must show that the party charged refused to make the requested accommodation." Astralis Condo. Assoc., 620 F.3d at 66. The parties stipulate that Plaintiff satisfies the first and third prongs. The matter thus turns on whether Plaintiff proposed a reasonable and necessary accommodation. The Astralis court noted, "There is not much case law under the FHAA in this circuit." Id. The court, therefore, turns to other circuits for guidance on the facts that arise in this case.

A defendant must "incur reasonable costs and take modest, affirmative steps to accommodate the handicapped as long as the accommodations sought 'do not pose an undue hardship or a substantial burden.'" Taylor v. Harbour Pointe Homeowners Assoc., 690 F.3d 44, 49 (2d Cir. 2012) (quoting Shapiro v. Cadman Towers, Inc., 51 F.3d 328, 333 (2d Cir. 1995)); see also Sch. Bd. of Nassau Cty. v. Arline, 480 U.S. 273, 288 n.17 (1987) (holding undue hardship includes undue financial burden under Rehabilitation Act). Plaintiff was required to give Defendants an opportunity to accommodate her, and Defendants must have "had an idea of what accommodation [Plaintiff] sought before . . . incurring liability for failing affirmatively to grant a reasonable accommodation." Id. (citing Tsombanidis v. West Haven Fire Dep't, 352 F.3d 565, 578 (2nd Cir. 2003)).

Plaintiff alleges she needed to remain in her three-bedroom apartment to store her stationary bicycle and arts and crafts because she used them to improve her health. She even includes a doctor's diagnosis and recommendation to prove it. (See Docket No. 80-8.) Defendants allegedly discriminated against Plaintiff by requiring her to move to a smaller apartment or pay fair market value for the three-bedroom apartment. In support of her charge, Plaintiff claims that Defendants failed to perform a

Civil No. 10-1953 (GAG)

thorough investigation to adequately understand the underlying rationale for Plaintiff's accommodation request. The PRHFA determined that Plaintiff no longer qualified for Section 8 benefits after her daughters moved out and directed the Cooperativa to either require Plaintiff to move to a smaller apartment and continue receiving Section 8 subsidies or remain in the three-bedroom apartment and pay fair market value. Plaintiff admits the PRHFA assessed her ailments and interviewed her physicians before deeming her a tenant of an over-housed unit subject to loss of Section 8 benefits. Defendants relied on this report in discontinuing her benefits and denying Plaintiff's request to remain in her apartment at a reduced price. The relevant inquiry is thus whether Plaintiff may burden Defendants with the cost of the forfeited subsidies to reasonably accommodate her. The answer is no.

An accommodation request is unreasonable if it puts a petitioner at a financial advantage (thereby placing a defendant at a disadvantage) rather than providing an equal opportunity. See Bryant Woods Inn v. Howard Cty., 124 F.3d 597, 605 (4th Cir. 1997). In Bryant Woods, the Fourth Circuit held that a defendant is not obligated to provide benefits to an individual with a disability when the benefits create a financial advantage unrelated to the individual's ameliorative efforts. Id. Bryant Woods differs from this case because Plaintiff clearly grounds her request in the ameliorative effects of her arts and crafts and stationary bicycling. Bryant Woods instructs the court, however, because Plaintiff requests financial advantage based on her economic status, not an equal opportunity based on her disability.

Plaintiff qualified for Section 8 benefits because she fell within the requisite income bracket, a qualification blind to an individual's disability status. Plaintiff qualifies for a reasonable accommodation because she is disabled. Nothing in the FHAA supports the notion that forfeiture of the former imposes an additional financial burden on a landlord accommodating the latter. Such rationale would permit a

Case 3:10-cv-01953-GAG-CVR    Document 88    Filed 05/15/13    Page 12 of 16

**Civil No. 10-1953 (GAG)**

disabled Section 8 recipient who earns in excess of Section 8's eligible income bracket, thereby losing the benefit, to remain in her apartment at the subsidized rate simply because of his disability. This cannot be the purpose of the FHAA's reasonable accommodation requirement.

Plaintiff's accommodation request would force Defendants to subsidize her rental fee because she no longer qualifies for Section 8 benefits in her current apartment. But no tenant, disabled or otherwise, would be allowed to remain in an apartment without paying fair market value or a contractually agreed-upon fee. Plaintiff seeks to gain an *advantage* because of her disability, not a placement on equal footing with non-disabled persons.[2] Section 8 subsidies do not hinge on remedial schemes under the FHAA, the ADA, or the Rehabilitation Act. Conversely, revocation of Section 8 benefits does not trigger a duty on a landlord to bear the financial burden of the difference between a tenant's subsidized rent and the fair market value, regardless of the tenant's disability status.

The Second Circuit found it "fundamental that the law addresses the accommodation of handicaps, not the alleviation of economic disadvantages that may be correlated with having handicaps." Salute v. Statford Green Garden Apts., 136 F.3d 293, 302 (2d Cir. 1998). The court held:

> Plaintiff[] seek[s] to use this statute to remedy economic discrimination of a kind that is practiced without regard to handicap. The "opportunity to use and enjoy" language of the FHAA reinforces the ability of people with handicaps to have the same opportunity as similarly situated persons who have no evident handicaps. What stands between th[is] [P]laintiff[] and the apartment[] . . . is a shortage of money, and nothing else. In this respect, impecunious people with disabilities stand on the same footing as everyone else. Thus, the accommodation sought by [P]laintiff[] is not "necessary" to afford handicapped persons "equal opportunity" to use and enjoy a dwelling.

---

[2] Although not noted in the minutes of the settlement conference, attorneys for the parties stated that rent in the Cooperativa three-bedroom apartment is $359 a month.

- -

Civil No. 10-1953 (GAG)

<u>Id.</u> The Cooperativa is willing to accommodate Plaintiff by allowing her to remain in her apartment. Plaintiff wants the Cooperativa to incur the difference in cost between the fair market value and the subsidized price of the three-bedroom apartment. This request is purely economic and is thus unnecessary. It arises because of Plaintiff's lost Section 8 benefits and not because of Plaintiff's disabilities.

### B.    Disparate Treatment and Retaliation

Plaintiff's complaint and reply to Defendants' motion for summary judgment also allege, without legal support and with minimal factual background, disparate treatment and retaliation. Nowhere does Plaintiff use the phrase "disparate treatment;" however, she classifies Defendants' actions as discriminatory or retaliatory. Plaintiff also claims Defendants retaliated against her for bringing previous claims against the Cooperativa, and by denying her reasonable accommodation request and imposing standard fees.

#### 1.    Disparate Treatment

Plaintiff alleges Defendants discriminated against her by 1) instituting multiple claims against her; 2) attempting to collect amounts not owed by her; 3) denying her rights to vote in assemblies; 4) attempting to prevent visitors from entering the premises; 5) breaching applicable consent and/or conciliation settlement agreements; 6) continuously threatening to evict her, and; 7) attempting to terminate her Section 8 benefits. (See Docket No. 76 at 4-5, 15-16.)

The record completely lacks any foundation for a disparate treatment claim. The Third Circuit succinctly discussed how a plaintiff must allege that a defendant discriminated against her on the basis of her disability.

Case 3:10-cv-01953-GAG-CVR    Document 88    Filed 05/15/13    Page 14 of 16

Civil No. 10-1953 (GAG)

> Generally, to prevail on a disparate treatment claim, a plaintiff must demonstrate that some discriminatory purpose was a motivating factor behind the challenged action. The discriminatory purpose need not be malicious or invidious, nor need it figure in solely, primarily, or even predominantly into the motivation behind the challenged action . . . . [I]t is not necessary to show an evil or hostile motive. It is a violation of the FHAA to discriminate even if the motive was benign or paternalistic. The plaintiff is only required to show that a protected characteristic played a role in the defendant's decision to treat her differently.

Comm. Servs., Inc. v. Wind Gap Mun. Auth., 421 F.3d 170, 177 (3d Cir. 2005) (citing cases) (internal citations omitted) (internal quotation marks omitted). Plaintiff does not clear this hurdle by her own admission and failure to proffer sufficient evidence. Nothing in her complaint, the record, or the opposition to the summary judgment motion reveals disability-based discrimination. Her disparate treatment claim, like her reasonable accommodation claim, traces its roots to *economic* discrimination. Plaintiff herself states, "Defendants['] *true intent* was to eliminate Section 8 beneficiaries from [the Cooperativa]." (Docket No. 76 at 20) (emphasis added).

The 1) institutional claims against her, 2) attempt to collect amounts not owed by her, 3) denial of a right to vote in assemblies, 6) threats to evict her, and 7) attempts to eliminate her Section 8 benefits all arose from a dispute based on economic hardship. Plaintiff failed to pay rent and fees associated with living in the Cooperativa, the Cooperativa had to charge her fair market value based on the PRHFA's report, state trial and appellate courts ruled against Plaintiff for the monetary relief requested, and Plaintiff likely misconstrued Defendants' consent decree with HUD, believing she would inexplicably be exempt from fees unrelated to the garbage depository matter despite language expressly stating the contrary. (See Docket Nos. 65-2 at 36-37; 68-1 at 3; 71-1.) Indeed, Plaintiff admits, "At the time the parties reached settlement in [the depository access matter] . . . Defendants and I were at odds as to some fees, *unrelated*

Case 3:10-cv-01953-GAG-CVR   Document 88   Filed 05/15/13   Page 15 of 16

Civil No. 10-1953 (GAG)

*to the issues [arising from the matter]*, that the [Cooperativa] claimed were owed by me . . . ." (Docket No. 76-1 at 8) (emphasis added). None of these claims find their origins in disability-based discrimination; rather, they arise because Plaintiff is impecunious, unsuccessful in her reasonable accommodation request, and without her Section 8 benefits. Claims (1)-(3) and (6)-(7) are thus insufficient to entitle Plaintiff to relief under a disparate treatment theory.

Claim (4) constitutes a potentially viable claim for either disparate treatment or failure to reasonably accommodate. Plaintiff alleges Defendants attempted to prevent visitors from entering the premises. If the purpose of these visits was to ameliorate the effects of Plaintiff's disabilities, Defendants could be liable. But Plaintiff neglects to elaborate. She fails to detail how the visitors were prevented from entry, why they visited, who they were, and why such prevention constitutes discrimination. The court bears no duty to fill in factual gaps to create a legal argument. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). Therefore, claim (4) is also insufficient. All of these claims are **DISMISSED.**

2.   Retaliation

Claim (5) states that Defendants retaliated against Plaintiff by breaching the consent order concerning garbage depository access. (See generally Docket No. 68-1.) Indeed, Plaintiff may plausibly assert that each of the seven claims constitutes a retaliatory breach of the consent order arising from the depository matter. But this court is not the proper one to adjudicate the matter. A HUD ALJ entered the consent order. (See id. at 4.) Therefore, the First Circuit Court of Appeals, pursuant to 42 U.S.C. § 3612(m), has jurisdiction to enforce the order. (See id.) Plaintiff's retaliation claim is thus **DISMISSED without prejudice.**

IV.    **CONCLUSION**

Civil No. 10-1953 (GAG)

For the reasons discussed above, Defendants' motion for summary judgment at Docket No. 65 is **GRANTED** and the motion to dismiss at Docket No. 64 is **MOOT**. This case is **DISMISSED**.


**SO ORDERED.**

In San Juan, Puerto Rico this 15th day of May, 2013.

S/ Gustavo A. Gelpí
GUSTAVO A. GELPI
United States District Judge